MELFORD N. ROLL et al.

*v.*

ABRAHAM EVERETT et al.

[Decided December 15th, 1906.]

1. The owner of a tract of land conveyed it to two persons as tenants in common, the deed providing that it was agreed between the parties that it should not "conflict with the title" to any part of the granted premises previously conveyed by the grantor to any parties. Thereafter one of the grantees sued to recover possession of a parcel of the tract, and in such action the grantor of the tract gave a deposition to the effect that he had conveyed the land involved in the action to a certain person prior to the conveyance to plaintiff therein and her co-tenant, and he refreshed his memory by reference to a book kept by himself showing the various conveyances which had been made, and by consent a copy of the book was made and used on the trial. Subsequently those representing the title conveyed to plaintiff in such action sued for partition of another parcel of the tract, and defendant claimed that the land sought to be partitioned was not included in the original conveyance of the tract, and sought to show the same by producing the copy of the book which had been introduced in the former action, and by proving that it was a true copy, without any proof of any effort to produce the original. It was not shown that the one to whom defendant claimed the original owner had conveyed the land had ever claimed title, or that he was in any possession claiming under a lost deed.—*Held,* that such evidence was insufficient to establish defendant's claim.

2. In a suit for partition the court would not determine the validity of a tax title asserted by defendant, but would hold the case to await the decision of a court of law as to the validity of such title.

3. Where the interest of one tenant in common was sold under execution, the purchasers could not, by subsequent dealings between themselves, such as partitions and conveyances, of which no notice was brought to the owner of the remaining interest, increase the purchaser's interest in the premises.

In partition. Final hearing on bill, answers and proofs.

*Mr. Frederic M. P. Pearse,* for the complainants.

*Mr. Alan H. Strong,* for the defendants.

PITNEY, V. C.

The complainants, on behalf of themselves and certain *cestui que trustents,* who are made defendants, but who are really in the same interest with the complainants, claim to be the owners of the equal undivided half of certain lands situate in the borough of South Amboy, Middlesex county, and file their bill against the defendants, other than the *cestui que trustents* just mentioned, praying for a partition.

I will hereinafter ignore the *cestui que trustent* defendants and speak of the real defendants, Abraham Everett et al., as the defendants.

The land in question consists of a block which was numbered forty-one (41), and laid out on a map of the village of South Amboy made in 1835 by one Perrine and on file in the office of the clerk of Middlesex county, and is bounded on the east by Pine avenue, on the north by Louisa street, on the west by Feltus street and on the south by Portia street.

The block lies in the extreme outskirts of the borough as now improved, and has never been improved in the least, or built on or occupied by anybody.

The streets at the east, north and west have been traveled, but not that to the south. The lot itself is covered with brush.

It is alleged by the complainant, and distinctly admitted by the defendants at the hearing, that this block of land is a part of what was in 1835 laid out by two gentlemen, Messrs. Cotheal and Thomas, as trustees for a syndicate of land speculators, and partially sold off at auction.

The whole tract thus laid out consisted of several small farms, the title of which was united in said Thomas and Cotheal in 1834.

In April, 1874, Cotheal, as the survivor of Thomas, conveyed those farms to Mary Jane Roll and Sarah E. Dey, in consideration of $2,500.

This deed of conveyance, however, contained this clause:

"It is agreed by and between the parties to these presents that this indenture *shall not conflict with the title to any part of the aforesaid premises previously sold and conveyed* by the said Alexander T. Cotheal

and James P. Thomas to any party or parties, and this deed is subject to any such conveyances. And all the parks, streets and avenues as laid out on the aforesaid map are hereby excepted from this deed, and are not quit-claimed or in any manner conveyed by these presents."

It is palpable, of course, that the object was to convey all the parts of these farms which were laid out on the map of 1835 and not previously conveyed.

The complainants represent the title so conveyed to Mary Jane Roll, and the defendants, as alleged by the complainants, represent the title so conveyed to Sarah E. Dey.

The public records show that the title passed from Mrs. Dey to Everett and Perrine by a sheriff's conveyance based on an execution against said Sarah and a decree for deficiency on the foreclosure of a mortgage against her. This sheriff's deed was dated April 11th, 1877, just three years after the conveyance to Roll and Dey.

No deed appears of record from Cotheal and Thomas, or either of them, to any person for the lot forty-one (41) here sought to be divided, and which was confessedly a part of the three farms comprising the original plot of the village of South Amboy.

That Cotheal and Thomas were once seized of the lot or block forty-one (41) was admitted by the defendants.

It follows, then, that the conveyance to Mrs. Roll and Mrs. Dey passed the title to them as tenants in common, with the usual result, in the absence of anything like adverse possession or claim of title on the part of anybody else, that they, Roll and Dey, became constructively in possession of the land, and as there has been no sort of adverse claim or possession, either as between Mrs. Roll and Mrs. Dey or their grantees, or by any third party, that constructive possession continues.

To this case made by the complainant the defendants set up two distinct defences.

They do not deny that Cotheal and Thomas were at one time seized of the premises in question, and that Cotheal, as survivor, was competent to convey them to Mrs. Roll and Mrs. Dey, or that the consideration of $2,500 mentioned in that deed was not

actually paid in good faith by Roll and Dey to Cotheal, but they allege that block forty-one (41) was not included in the description found in that conveyance, but was excepted thereout by the language of that deed above quoted, because it had been previously conveyed away by Thomas and Cotheal to one Taylor.

Now, I conceive the burden is on the defendants to prove this, and this they attempt to do. They do not produce any deed executed by Cotheal and Thomas, or either of them, or any record of any, nor the evidence of anybody that they ever saw such a deed, or that it was ever executed. Nor do they produce any memorandum in the handwriting of either Cotheal or Thomas that they had ever executed such a deed, but they attempt to prove it in this wise:

In the year 1884 an action of ejectment was brought in the Middlesex circuit court by Mrs. Roll against one Rea to recover possession of two small building lots, parcel of another block in South Amboy, based on the before-mentioned conveyance of 1874, and in that cause the deposition of Mr. Cotheal, then alive and a resident of New York City, was taken, wherein he swore that he had made a conveyance of the lots claimed by Rea to one Leary, and for that purpose Mr. Cotheal refreshed his memory by reference to a book kept by himself, or under his immediate direction, in which he set down the various conveyances which he and his co-trustee, then dead, had made of these premises. Also an account which he had kept of the amount of money received for such sale and the persons from whom he had received it. This book and the original account he refused to have go out of his possession, but, by consent of counsel in that cause, a copy of each was made and compared and used on the trial of the case of *Roll* v. *Rea,* which took place in 1886. Defendants now produce the copy then made of the original book and document in Cotheal's possession, and prove by a witness that those copies are true copies of the original, compared at the time of the taking of Mr. Cotheal's evidence, and they offered the copies in evidence in this cause without any proof of any effort to produce and find the original.

The object of this offer is to show that block forty-one (41) was conveyed to one Taylor by Cotheal and Thomas in 1835.

They also produce an old copy of the Perrine map, upon which block forty-one distinctly appears, and across it is written the word "Taylor."

I admitted these documents in evidence subject to the timely objection of counsel for the complainants, but expressed the opinion at the time that the evidence was insufficient to show that the conveyance of 1874, upon which complainants rely, did not include the land in question, or rather, that the land in question was excepted from that conveyance under the excepting clause above quoted.

After having heard further argument and given the matter further consideration, I am still of that opinion.

If Taylor had ever come forward and claimed title to the land, or was in possession claiming under a lost deed, it is possible, I will not say probable, that a different ruling might be proper. But the present situation is simply this: Two persons pay for and accept a conveyance from a third party of land of which their grantor was once the undoubted owner. One files a bill against the other for partition, and that other sets up as a defence that the land in question was not included in the terms of the deed under which they both claim, or rather, was excepted out. Now, I think in such a case the person making the allegation should be held to strict proof. Such proof has not been made.

Moreover, it is worthy of remark that the clause in the deed from Cotheal to Roll and Dey of 1874 does not say that the description in the conveyance shall not be held to include any land previously conveyed, but it says that "this description shall not *conflict* with the title of any part of the aforesaid premises previously sold and conveyed," &c. Now, the difference between that language and the verbiage of an ordinary exception out of a description may be slight, but I think, for present purposes, it is material. It permits the doctrine of constructive possession to hold good until the actual appearance and claim made by some holder of an older title.

This conclusion renders it unnecessary to determine another question which would arise if the giving of the deed of Thomas

and Cotheal to Taylor in 1835 had been established by parol, and that question is whether such proof would at all affect the relation of these parties to each other since it would destroy the title of each and neither have any title by constructive possession.

Here we have a party at one time the admitted owner of the premises making a conveyance of them to two parties by a description which clearly describes and includes a certain block of land, but containing a clause which, as claimed by one party, excludes all land previously conveyed. Now, it seems clear enough that such conveyance gives the grantees a color of title with constructive possession, which cannot be disturbed and destroyed by parol proof of a former conveyance under which no entry or possession has been made or taken. If such parol proof be made it does not in the least affect the relation of the two grantees to each other. It simply results in showing that neither has any title. Now, when neither has taken possession to the exclusion of the other, and neither has title, I find it difficult to perceive how either can object to a legal proceeding which will result in simply marking on the ground the limits of what would be the title of each if they had any. The only effect that I can perceive of the proof by the defendants that neither they nor the complainants have any legal title is to relieve them from the liability to pay costs.

I have looked through numerous cases, including all those cited by counsel for the defendants, and I can find no authority for the position which he here takes in that respect. The rule that the defendant in ejectment may defend his actual possession, or that of his tenant, by showing that the plaintiff has no title has no application to the present case, for the simple reason that here the defendants are not in actual possession.

The next defence set up by the defendants is a tax title supported by a deed made on the 4th day of June, 1877, by John Disbrow, collector of the township of South Amboy, to Ward C. Perrine and Abram Everett, who, as we have seen, had purchased at a sale by the sheriff the right of Mrs. Dey in the premises by a deed dated the 11th day of April, 1877.

The deed by the collector of June 4th, 1877, is based on a warrant signed by five persons purporting to be the township committee of the township of South Amboy, of whom Abram Everett, one of the grantees, purports to be the chairman, and it recites that

"it appears to the committee that one John H. Clark, one Milley D. Powers, and George Leary, who reside out of the state, were duly assessed by the assessor of said township in the sum of, Milley D. Powers for the year 1874 for $91 and for the year 1875 $154.56, John H. Clark for four years $41.10, George Leary $14.10 for their taxes for the years [without mentioning the years] on account of lands, tenements and hereditaments of the said John H. Clark, Milley D. Powers and George Leary, situate in said township, which said lands, tenements and hereditaments were by the said assessor description ——— [no description given], and that the said assessment, together with interest thereon, &c., have remained unpaid for the space of one year after the said tax was payable, you are therefore hereby commanded to make the said sum of the taxes aforesaid and interest thereon from and after the twentieth day of December, A. D. 1874, the cost and fees in relation to said assessment and the costs of the execution hereof of the lands, tenements and hereditaments so described as aforesaid, by selling the same or any part thereof as will be sufficient for that purpose for the shortest term  *  *  *  and you are further commanded to pay the money raised by such sale to the township committee and make return of this warrant and your proceedings thereunder."

Then follows a recital that the collector had given notice of the time and place of the sale "of the lands, tenements and real estate in said warrant described" by advertisement, &c., and at the time and place, on the 30th day of June, 1877, he sold and struck off the following-described part of said lands, tenements and hereditaments, namely, the lands of John H. Clark. Then follows a reference to block 41 and lots in other blocks, with a reference to the map of Perrine, in the township of South Amboy, previously mentioned, and that Perrine and Everett bid for the lands the amount of the tax mentioned in the warrant, $127.77, for the term of seventy-five years. Then there is an acknowledgment of that deed before a master in chancery on June 4th, 1877, and the ordinary affidavit that the lands had been sold to the best advantage, &c.

To this instrument the counsel for the complainants makes

two answers—*first,* that it is void on its face, and *second,* that if it is not so void, and the court shall be of opinion that it is a valid deed, he takes the ground, for which there is more or less authority, that one tenant in common cannot cut off the interest of another tenant in common by buying in the property under a sale for taxes under circumstances like those above recited, but that the same are subject to redemption by him at any time, and offers to pay one-half of the amount so paid by Ward and Perrine, with interest during all these years.

I will first consider his first point.

I find the law, as to sale of land for taxes, to have been in 1877 that found in the revision of 1877, page 1163, &c. It consists of the act of March 17th, 1854; a supplement of March 25th, 1863, and a supplement of March 26th, 1873. The first section compels the assessor to assess all the lands in the names of the owners, "and to designate the same by some short description as will be sufficient to ascertain the location and extent thereof."

The second section provides that the tax so assessed shall remain a lien thereon for two years from the time when the taxes were payable.

The third section provides that if the taxes remain unpaid for a year (reduced to four months by the act of 1863), then the township committee may issue a warrant to the constable of the township

"commanding him to make said taxes, with the interest, &c., of the lands, tenements and hereditaments or real estate *on account whereof the same were assessed as aforesaid, and of which the assessor's description shall be therein set forth,* for the shortest term."

Section 4 provides that the warrant, before execution, shall be recorded by the clerk of the township in a book to be provided.

Section 5 provides that the constable shall advertise, &c.

Section 6 directs that a deed shall be made.

Section 7 provides that, notwithstanding any mistake in the names of the owners of any lands in assessing the taxes, the assessment shall be valid.

The supplement of 1873 provides for the sale of lands of any person or persons, whether the owner is a resident or not, and provides for a sale if the taxes are unpaid for the space of four months, instead of a year, and repeats that the lien is to be for two years, and section 2 provides for redemption by the owner in one year. The revision of this act made after 1877, principally March 14th, 1879, and found in the supplement of the revision, page 990, was, of course, not in force at the time of the giving of the tax deed in this case.

The warrant in this case was issued to the collector instead of the constable, presumably by virtue of a special act entitled "An act to facilitate the collection of taxes in the township of East Brunswick, in the county of Middlesex," approved April 4th, 1871, page 1171, which act was extended to South Amboy by an act of 1872, page 616. By that act the collector of the township was given power to enforce the collection of all delinquent taxes "assessed on any real estate in said township by exposing the same for sale," &c., to the person or persons who will take the *least quantity of said land to be laid out in one body and to commence at some designated corner* of the premises on which said taxes are claimed to be due. This provides for sale in fee-simple of a specific quantity of land. The second section provides that no land shall be sold until the township collector shall have made a return that the taxes are unpaid and have by him been returned as delinquent, and shall verify the same by his affidavit. The third section provides that within ten days after the return of delinquents by the collector the committee shall cause a copy of the return to be recorded in the clerk's office and the copy to be posted in three public places. The fourth section provides that the township committee shall cause a certified copy of the return and affidavit to be published therein specifying .the time and place where the same will be sold at auction, and on that day the collector shall sell the tracts to the person or persons who shall take *the least quantity of the premises* so offered, and immediately thereafter such sale the township committee shall execute and deliver to the purchaser a certificate of such sale describing the piece or pieces sold and the amount paid and entitling the

holder thereof to a deed of the premises so sold, with a proviso that the owner may redeem within two years. It then provides that if at the expiration of one year the owner shall not appear and redeem then the collector may execute a deed. Then follows a repealer of inconsistent acts.

It is quite evident from the tax deed here in question that the township committee and the township collector have failed to follow either this special act applicable to the townships of East Brunswick and South Amboy or the general act of 1854. No proof was offered in this cause of any of the acts required by the statute to validate a tax sale either under the general act of 1854 or the special act of 1871.

Reliance was had by counsel upon the force of those sections of the act concerning the sale of lands, approved March 27th, 1874, and found in the revision of 1877 at page 1045, sections 14 and 15, which make the recitals in such a deed *prima facie* proof of their truth. The force of those recitals in tax deeds was dealt with by the supreme court in *Allen* v. *Woodbridge, 42 N. J. Law (13 Vr.) 401,* and on error, *Woodbridge* v. *Allen, 43 N. J. Law (14 Vr.) 262.* The opinion of the court of errors and appeals contains an elaborate treatise on the state of the law at that time.

Without going into detail, if it were within my jurisdiction to determine the question, I should feel constrained to hold the deed here in question absolutely void—*first,* because the recital in the deed does not show that the taxes assessed against Clark were so assessed upon the very lands which were conveyed; *second,* because they do not show that the taxes were so assessed and became payable within two years before the sale, but rather the contrary; *third,* if we look at the East Brunswick act of 1871 we find no such inconsistency in its provisions in this respect with the general act from which we can infer that the provisions in that behalf of the general act were repealed by the special act, and we find the collector in his proceedings not following the provisions of that act.

But, as I feel constrained, by the decision of the court of errors and appeals in the famous and familiar case of *Slock-*

*bower* v. *Kanouse, 50 N. J. Eq.* (*5 Dick.*) *461,* not to determine any question of pure law in this cause, however plain it may be, I shall leave that question to be determined in the manner to be suggested farther on.

One other matter deserves attention. The defendants show that by divers conveyances and partitions between Everett and Perrine they have treated and dealt with the complete title precisely as if they owned the whole, and claim that while there has been no sort of adverse possession or occupation of the premises by the defendants or any other persons whatever at any time, yet that this dealing in conveyances, in language which indicated that they had a complete title, gives them a sort of *quasi*-adverse possession.

I cannot accede to that position.

Everett and Perrine undoubtedly bid for and accepted from the sheriff in April, 1877, a deed for the interest of Mrs. Dey. That deed recites a levy on these lands and says the description is taken from Book 146 of Deeds, pages 612, &c., which is the deed from Cotheal to Roll and Dey, and then, farther on, it specifies what part of that land is levied on, as follows:

"Also block No. 41, consisting of forty lots, being a part of the same premises conveyed by Alexander Cotheal to the said Mary J. Roll and Sarah E. Dey by deed dated April 16th, 1874, and recorded in the clerk's office of the county aforesaid."

Here, then, in the levy, which preceded the sale under execution, is a distinct notice to the purchaser that the lands they were about to purchase had been conveyed to Roll and Dey by a deed which presumably created in them an estate as tenants in common, so that the purchaser had notice that Mrs. Dey had *prima facie* only a half interest.

Now, it is quite plain that any subsequent dealings between themselves, of which no notice was brought to Mrs. Roll, could not increase Everett's and Perrine's interest in the premises. Mrs. Roll and her successors in title were under no obligations to watch and take notice of the subsequent conveyances between Perrine and Everett of the interest which they acquired under the sheriff's deed.

Complainants argue that this court has, in some instances, assumed jurisdiction to determine the validity of a tax title. But those instances were cases where the tax was outstanding and a cloud on the title and the bills were filed especially to remove the cloud, or where the question of the validity of a tax title arose incidentally in a foreclosure proceeding or the like. In the present instance, complainants do not attack the tax title by their bill and it is not framed with that view. Nor do I find any more strength in the further point made by the complainants, namely, that the title of the defendants, or some of them, is equitable only. That circumstance does not give the complainants any right to invoke the aid of this court to deal with so much of the defendants' title as is clearly legal. For reasons already given, I feel constrained to await the decision of a court of law as to the validity of the tax title.

Under the circumstances of this case, where neither party have anything more than a constructive possession of the premises, I think the burden is on the defendants to establish their title under the collector's deed, and I will hold the case to enable the defendants to establish that title as they may be advised. Proceedings for that purpose must be taken within thirty days, and if they shall be advised to bring an action of ejectment against the complainants the bringing of such action shall not be held, except for the purposes of the action, to be an admission that the complainants are in actual possession, and any other provisions may be inserted in the decree to be advised as may be proper to protect the rights of each party in the premises.

The question whether, if the tax title is established, it is subject to redemption by complainants as a tenant in common, is reserved.